UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

FILED
APR 08 2016
[signature] CLERK

| | |
|---|---|
| CATERING BY MARLIN'S, INC. d/b/a CBM Managed Services, a South Dakota corporation,<br><br>Plaintiff,<br><br>vs.<br><br>REBECCA CHRYSTAL and A'VIANDS, LLC, a Minnesota limited liability company,<br><br>Defendants. | Civil No. 16-4052<br><br>**COMPLAINT** |

Plaintiff, Catering by Marlin's Inc., d/b/a CBM Managed Services ("**CBM**"), for its Complaint against Rebecca Chrystal ("**Chrystal**") and A'Viands, LLC ("**A'viands**")[1], states and alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

1. CBM is a corporation organized under the laws of South Dakota with its principal place of business in Sioux Falls, South Dakota. CBM provides food and commissary services to county, state and federal correctional facilities, long and short term healthcare facilities, school districts, family restaurants and corporate dining cafeterias throughout the United States.

2. Upon information and belief, A'viands is a corporation organized under the laws of Minnesota, with its principal place of business located at 1751 County Road B West, Suite 300, Roseville, MN 55113.

3. A'viands is registered to do business in South Dakota as a foreign corporation.

[1] Chrystal and A'Viands are collectively referred to as the "**Defendants**."

4. Upon information and belief, Chrystal is an individual who resides at 2920 Rosebury Dr., Wisconsin Rapids, Wisconsin 54494. Upon information and belief, Chrystal is a current employee of A'viands, serving in the capacity of District Manager.

5. The citizenship of CBM is entirely diverse from the citizenship of Defendants, and the matter in controversy exceeds $75,000, exclusive of interest and costs. Therefore, the jurisdiction of this Court is properly invoked pursuant to 28 U.S.C. § 1332.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a)(1) and (2) because a substantial part of the events and omissions giving rise to CBM's claims occurred in this district.

## FACTS

7. On January 12, 2010, Chrystal executed a Non-Compete and Non-Disclose Agreement, a true and correct copy of which is attached hereto as **Exhibit A** and incorporated herein by reference.

8. On January 11, 2011, Chrystal executed a Non-Compete and Non-Disclose Agreement, a true and correct copy of which is attached hereto as **Exhibit B** and incorporated herein by reference.

9. On March 29, 2014, Chrystal and CBM executed a Non-Competition, Non-Solicitation, and Non-Disclosure Agreement, a true and correct copy of which is attached hereto as **Exhibit C** and incorporated herein by reference.[2]

10. Pursuant to the Agreement, Chrystal agreed, *inter alia*, that she would not, during the term of her employment and for a period of two years thereafter, "directly or indirectly, own, manage, operate, control, be employed by, perform services for, consult with, solicit business

[2] The Agreements set forth in Exhibits A, B, and C are collectively referred to as the "**Agreement**".

for, participate in, or be connected with the ownership, management, operation, or control of any business which performs services materially similar to or competitive with those provided by [CBM], in any Market Area".

11. Pursuant to the Agreement, Chrystal further agreed that she would not, during the term of her employment and for a period of two years thereafter, "solicit, induce, or attempt to induce any past or current customer of [CBM] (a) to cease doing business in whole or in part with or through [CBM]; or (b) to do business with any other person, firm, partnership, corporation, or other entity which performs services materially similar to or competitive with those provided by [CBM], in any Market Area".

12. The term, Market Area, is defined in the Agreement as follows:

> All areas where [CBM] has had an office or has sold products or provided services to customers during the period [Chrystal] is or was employed by [CBM]. If the location where [CBM] has had an office or has sold products or provided services to customers is within a standard metropolitan or micropolitan statistical area as designated by the federal government, the 'Market Area' shall be that standard metropolitan or micropolitan statistical area. In all other cases, the term 'Market Area' shall mean the county where [CBM] has had an office or has sold products or provided services to customers.

13. Pursuant to the Agreement, Chrystal further agreed that she would not, during the term of her employment with CBM and for a period of two years thereafter, "use for any purpose or disclose to any person or any entity any confidential information acquired during the course of employment with [CBM]."

14. Chrystal further agreed that she would not, "directly or indirectly, copy, take, or remove from [CBM]'s premises, any of [CBM]'s books, records, customer lists, or any other documents or materials."

15. On or about February 1, 2016, Chrystal's employment with CBM was terminated when Chrystal resigned.

16. Chrystal initially informed CBM that she would be working for Kum & Go Gas Stations.

17. However, CBM later learned that Chrystal was employed by A'viands as a District Manager based out of A'viands' Anoka, Minnesota location, and CBM confirmed with A'viands that Chrystal was so employed.

18. Upon information and belief, A'viands merged with TrustHouse Services Group to form one of the ten largest food service providers in the United States. Combined, A'viands and TrustHouse Services operate in 32 states. A'viands continues to operate as an autonomous operation within the TrustHouse Services Group and manages over 200 clients across 13 states.

19. CBM currently has more than 250 sites located in 33 states, including 60 sites within the states of Minnesota, South Dakota, Wisconsin, Michigan, and Iowa. Accordingly, CBM competes with A'viands and TrustHouse Services Group on a regular basis.

20. Chrystal's position with CBM was the Operational Field Management Support. Her duties included providing support for CBM's field operations and field management staff throughout the United States. This position required extensive correctional food service management experience, in conjunction with a vast knowledge of CBM's policies, procedures, and practices. A critical function of this job was to assist with the review of weekly financial reporting from the field, putting her in contact with District Managers and Unit Managers on a regular basis.

21. Chrystal's access to CBM's site locations, site financials, policies, procedures, practices and bid strategies, combined with A'viands being in direct competition with CBM in almost every state in which the two companies do business, would result in CBM having a strong competitive disadvantage if Chrystal were to remain employed by A'viands. This is the very

reason that CBM requires employees in Chrystal's former position with CBM to sign non-competition, non-solicitation, and non-disclosure agreements.

22. Upon her resignation, Chrystal took her company-issued laptop computer with her. CBM requested that the laptop computer be returned and Chrystal obliged.

23. CBM is concerned that Chrystal accessed confidential information from the laptop computer and provided that confidential information to A'viands.

24. On March 29, 2016, CBM, by and through its counsel, mailed a letter, via overnight delivery and first class mail, to Chrystal reminding her of the promises made in the Agreement. CBM requested written confirmation—by close of business on April 1, 2016—that Chrystal was not employed by CBM's competitor, A'viands. A true and correct copy of said letter, together with proof of delivery, is attached hereto as **Exhibit D** and incorporated herein by reference.

25. Chrystal failed to provide CBM with written confirmation that she was not employed by A'viands.

26. Also on March 29, 2016, CBM, by and through its counsel, mailed a letter, via overnight delivery and first class mail, to A'viands indicating that CBM intended to enforce the Agreement, requesting written confirmation—by close of business on April 1, 2016—that Chrystal is not employed by A'viands, and requesting that A'viands immediately take steps necessary to ensure that Chrystal is in compliance with the Agreement. A true and correct copy of said letter, together with proof of delivery, is attached hereto as **Exhibit E** and incorporated herein by reference.

27. A'viands failed to provide CBM with written confirmation that Chrystal was not employed by A'viands.

28. By being employed by A'viands and competing against CBM, Chrystal has breached the Agreement.

29. By employing Chrystal in violation of the Agreement, A'viands has tortiously interfered with CBM's contractual relationship with its former employee.

30. CBM has commenced this lawsuit to enforce the Agreement and CBM's rights under South Dakota law regarding the Agreement and with regard to the tortious conduct of A'viands.

**FIRST CAUSE OF ACTION**

**CHRYSTAL'S BREACH OF THE AGREEMENT**

31. CBM re-alleges and incorporates by reference the foregoing paragraphs of this Complaint as though fully set forth herein.

32. The Agreement is a valid and enforceable contract, and CBM has fully performed all of its duties and obligations under the Agreement.

33. Chrystal has breached the Agreement by being employed by CBM's competitor, A'viands, within the specified geographic area set forth in the Agreement.

34. As a direct and proximate result of Chrystal's breach of the Agreement, CBM is suffering immediate and irreparable injury, harm and damage, and will continue to suffer injury, harm, and damage unless and until Chrystal is enjoined from engaging in further misconduct.

35. As a direct and proximate result of Chrystal's breach of the Agreement, CBM has suffered damages in an amount in excess of $75,000, exclusive of interest and costs, to be determined at trial.

36. In addition, the Agreement allows for CBM to recover its attorneys' fees and costs incurred in enforcing the Agreements against Chrystal.

## SECOND CAUSE OF ACTION

## A'VIANDS' TORTIOUS INTERFERENCE WITH THE AGREEMENT

37. CBM re-alleges and incorporates by reference the foregoing paragraphs of this Complaint as though fully set forth herein.

38. At all times material hereto, A'viands was aware of the Agreement and its non-competition provisions.

39. A'viands tortiously interfered with the Agreement by hiring—and continuing to employ—Chrystal as a District Manager in direct competition with CBM.

40. A'viands' acts of interference as described above were willful, wanton and malicious.

41. As a direct and proximate result of A'viands' tortious interference, CBM is suffering immediate and irreparable injury, harm and damage, and will continue to suffer injury, harm, and damage unless and until A'viands is enjoined from engaging in further misconduct.

42. As a further direct and proximate result of A'viands' tortious interference, CBM has suffered damages in an amount in excess of $75,000, exclusive of interest and costs, to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, CBM prays that the Court enter judgment and decree in favor of CBM and against Defendants as follows:

1. Temporarily, preliminarily, and permanently enjoining and restraining Chrystal from engaging in conduct in violation of the Agreement.

2. Awarding CBM damages for Chrystal's breach of the Agreement, in excess of $75,000, exclusive of interest and costs, to be determined at trial.

3. Temporarily, preliminarily, and permanently enjoining and restraining A'viands (and any entity or individual acting as an agent of them or for their benefit) from engaging in conduct constituting tortious interference with the Agreement.

4. Awarding CBM compensatory, consequential, and punitive damages for A'viands' tortious interference with the Agreement, in excess of $75,000, exclusive of interest and costs, to be determined at trial.

5. Awarding CBM its attorneys' fees and expert fees, costs, and disbursements.

6. Awarding CBM such other, further, or different relief as the Court may deem just and proper.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Dated this 8th day of April, 2016.

LYNN, JACKSON, SHULTZ & LEBRUN, P.C.

Eric R. Kerkvliet
Ross M. Wright
110 North Minnesota Avenue, Suite 400
P.O. Box 2700
Sioux Falls SD 57101-2700
Phone: (605) 332-5999
Fax: (605) 332-4249
ekerkvliet@lynnjackson.com
rwright@lynnjackson.com
*Attorneys for Plaintiff*